﻿Citation Nr: AXXXXXXXX
Decision Date: 01/22/19 Archive Date: 01/22/19

DOCKET NO. 180221-635
DATE: January 22, 2019

ORDER

The application to reopen the claim of entitlement to service connection for fibromyalgia is granted.

Entitlement to service connection for fibromyalgia is granted.

FINDINGS OF FACT

1. In a February 2008 decision, the Board of Veterans’ Appeals (Board) denied service connection for fibromyalgia. 

2. The evidence received since the February 2008 decision is new and material and relates to an unestablished fact necessary to substantiate the claim for service connection for fibromyalgia.

3. The Veteran served on active duty in the Southwest Asia theatre of operations for periods of time between 1997 and 1999, to include service in the Arabian Sea.

4. The Veteran has fibromyalgia, a medically unexplained chronic multisymptom illness that is defined by a cluster of signs or symptoms.

CONCLUSIONS OF LAW

1. The February 2008 Board decision that denied entitlement to service connection for fibromyalgia is final. 38 U.S.C. § 7103 (2012); 38 C.F.R. § 20.1100 (2017).

2. New and material evidence has been received to reopen the claim of service connection for fibromyalgia. 38 U.S.C. § 5108 (2012); 38 C.F.R. § 3.156 (2017).

3. Fibromyalgia is presumed to have been incurred as a result of the Veteran’s active service in Southwest Asia. 38 U.S.C. § 1110, 1117 (2012); 38 C.F.R. §§ 3.303, 3.102 3.317 (2017).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from June 1997 to January 2003.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework. 

In his April 2016 substantive appeal, the Veteran requested a video conference hearing before the Board. Subsequent to the Veteran opting in to the RAMP program in May 2018, a rating decision was issued in August 2018. The rating decision denied multiple claims. The Veteran subsequently appealed only the issue of entitlement to service connection for fibromyalgia, under the Direct Review option, choosing not to have hearing. See document received August 21, 2018. Therefore, the Veteran has not been provided a hearing as originally requested. 

New and Material Evidence

1. Whether there is new and material evidence to reopen the claim of entitlement to service connection for fibromyalgia

If a claim of entitlement to service connection has been previously denied and that decision became final, the claim can be reopened and reconsidered only if new and material evidence is presented with respect to that claim. 38 U.S.C. § 5108.

New evidence means existing evidence not previously submitted to agency decision-makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). The threshold for reopening is low. Shade v. Shinseki, 24 Vet. App. 110, 117 (2010).

The Board denied the Veteran’s claim of service connection for fibromyalgia in a February 2008 decision, noting “that the veteran's fibromyalgia has not become manifest to a degree of 10 percent”. The Chairman of the Board did not order reconsideration of this decision and the Veteran was notified of his appellate rights, but did not file a Notice of Appeal with the United States Court of Appeals for Veterans Claims (Court) within 120 days. Therefore, the decision is final. See 38 U.S.C. § 7103 (2012); 38 C.F.R. § 20.1100 (2017).

The evidence received since the February 2008 Board decision includes evidence that is both new and material to the claim. See 38 C.F.R. § 3.156 (2017). For example, a July 2014 VA examiner found the Veteran’s fibromyalgia symptoms are episodic with exacerbations. This new evidence addresses a reason for the previous denial, e.g., whether fibromyalgia has manifested to a compensable degree. The credibility of this evidence is presumed for purposes of reopening the claim. Accordingly, the claim is reopened and will be considered on the merits.

Service Connection

Generally, to establish service connection, a claimant must show: (1) a present disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service, the so-called “nexus” requirement. See 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303; see also Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

For a veteran who had active service in the Southwest Asia theater of operations during the Gulf War era (a Persian Gulf veteran), presumptive service connection may be established for a qualifying chronic disability, which specifically includes a medically unexplained chronic multisymptom illness that is defined by a cluster of signs or symptoms, such as chronic fatigue syndrome and fibromyalgia. See 38 U.S.C. §§ 1117, 1118 (2012); 38 C.F.R. § 3.317 (2017).

Compensation shall not be paid under 38 C.F.R. § 3.317 if there is affirmative evidence that the disability was caused by a supervening condition or event that occurred between a veteran’s most recent departure from active duty in the Southwest Asia theater of operations and the onset of the disability.

1. Entitlement to service connection for fibromyalgia

Upon review of the evidence of record, the Board finds service connection for fibromyalgia is warranted.

The Agency of Original Jurisdiction established the Veteran served in the Arabian Sea aboard the USS Independence from October 1997 to April 1998 and the USS Kitty Hawk during 1999. Thus, the Veteran is a Persian Gulf veteran.

As noted above, the Veteran was provided a VA fibromyalgia examination in July 2014. The examiner noted the Veteran was first diagnosed with fibromyalgia in 2003. The examiner found 11 tender points for pain and noted findings, signs and symptoms attributable to fibromyalgia including widespread musculoskeletal pain, headache, and irritable bowel symptoms. Additionally, the examiner noted the frequency of fibromyalgia symptoms as episodic with exacerbations. The examiner indicated continuous medication is not required for control of the Veteran’s fibromyalgia symptoms. However, the examiner reiterated that the Veteran is “on no medication for this since he did not tolerate the meds that were tried several yrs ago”. The episodic nature of the Veteran’s fibromyalgia, with exacerbations, supports a finding that it is disabling to a compensable degree. See 38 C.F.R. § 4.71a, Diagnostic Code 5025.

The Veteran’s treatment records are consistent with the examiner’s findings. See, e.g., VA treatment records from June 6, 2014 (bilateral knee pain “[m]ost likely a combination of” patellofemoral syndrome and fibromyalgia) and December 8, 2014 (Veteran complains of episodic knee pain and tender points). 

The Board notes that there is evidence indicating that the Veteran did not or does not have fibromyalgia, including VA examinations from 2005 and 2006. However, in light of the more recent VA examination, treatment records noting the likelihood of fibromyalgia, and the fact that VA treatment records list fibromyalgia as an active problem, the Board resolves doubt in favor of the Veteran and finds the Veteran has had fibromyalgia to a compensable degree during the pendency of this claim. Therefore, service connection for fibromyalgia is warranted. 

 

The Board has considered the 2014 VA medical opinion. In essence, exposure should be considered minimal and the disorder is common in the general population. Such statements fall far short of what is needed to rebut the presumption. The Secretary has established that the disorder is a presumptive disease. That fact that it may be common in the population is not relevant in the legal sense. To the extent there was a report of minimal exposure, the examiner fails to establish how much exposure was necessary and the exact nature of the particular exposure. Lastly, we find that the disorder has existed for the appropriate amount of time and to the degree of severity so as to satisfy presumptive requirements. 

 

H. N. SCHWARTZ

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Gregory T. Shannon, Associate Counsel